# No. 21-5945

## In the United States Court of Appeals for the Sixth Circuit

UNITED STATES,
*Plaintiff/Appellee,*

v.

ANTWONE MIGUEL SANDERS,
*Defendant/Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NO. 20-CR-009 (HON. JOSEPH M. HOOD)

APPELLEE'S PETITION FOR REHEARING EN BANC

CARLTON S. SCHIER, IV
   United States Attorney

CHARLES P. WISDOM, JR.
   Chief, Appellate Division

LAUREN TANNER BRADLEY
   Assistant United States Attorney
   Eastern District of Kentucky

KENNETH A. POLITE, JR.
   Assistant Attorney General

LISA H. MILLER
   Deputy Assistant Attorney General

SOFIA M. VICKERY
   Attorney, Appellate Section
   Criminal Division
   U.S. Department of Justice
   950 Pennsylvania Ave., N.W., Suite 1264
   Washington, DC 20530
   (202) 305-7408
   Sofia.Vickery@usdoj.gov

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ..................................................................................... ii

RULE 35(b) STATEMENT ......................................................................................... 1

STATEMENT OF THE CASE .................................................................................. 2

ARGUMENT ................................................................................................................ 7

      A.    Rehearing en banc is needed to realign the Court's precedent on probable cause ...................................................................... 7

      B.    Rehearing en banc is needed to realign the Court's precedent on the good-faith exception. ......................................................... 10

CONCLUSION ........................................................................................................... 14

CERTIFICATE OF COMPLIANCE ..................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Aguilar v. Texas,*
   378 U.S. 108 (1964) ............................................................. 11

*Davis v. United States,*
   564 U.S. 229 (2011) ............................................................. 13

*District of Columbia v. Wesby,*
   138 S. Ct. 577 (2018) ......................................................... 10

*Franks v. Delaware,*
   438 U.S. 154 (1978) ............................................................... 7

*Illinois v. Gates,*
   462 U.S. 213 (1983) ........................................................... 7, 9

*Nathanson v. United States,*
   290 U.S. 41 (1933) ............................................................. 11

*United States v. Allen,*
   211 F.3d 970 (6th Cir. 2000) (en banc) ....................... 2, 7, 8, 14

*United States v. Carpenter,*
   360 F.3d 591 (6th Cir. 2004) (en banc) .................... 2, 11, 12, 13

*United States v. Christian,*
   925 F.3d 305 (6th Cir. 2019) (en banc) ......................... *passim*

*United States v. Dyer,*
   580 F.3d 386 (6th Cir. 2009) ............................................. 6, 8

*United States v. Frazier,*
   423 F.3d 526 (6th Cir. 2005) ................................................. 6

*United States v. Gilbert,*
   952 F.3d 759 (6th Cir. 2020) ............................................... 13

*United States v. Leon,*
   468 U.S. 897 (1984) ..................................................... 4, 10, 11

*United States v. McCoy*,
 905 F.3d 409 (6th Cir. 2018)........................................................................11, 12

*United States v. Reed*,
 993 F.3d 441 (6th Cir.), *cert. denied*, 142 S. Ct. 289 (2021)........................... 12

*United States v. Sanders*,
 59 F.4th 232 (6th Cir. 2023)...................................................................... *passim*

*United States v. White*,
 874 F.3d 490 (6th Cir. 2017)............................................................................ 11

**Statutes**

18 U.S.C. § 922............................................................................................................2

18 U.S.C. § 924............................................................................................................2

21 U.S.C. § 841............................................................................................................2

**Rules**

6th Cir. I.O.P. 35........................................................................................................1

Fed. R. App. P. 35......................................................................................................1

# RULE 35(b) STATEMENT

Rehearing en banc is appropriate to "secure or maintain uniformity of the court's decisions" or resolve a "question of exceptional public importance." Fed. R. App. P. 35(a). This decision meets that standard.

In 2019, in *United States v. Christian*, this Court, sitting en banc, clarified the basic principles of Fourth Amendment search-warrant jurisprudence: a reviewing court owes "'great deference'" to a magistrate judge's determination of probable cause; an issuing court must "look holistically" at an affidavit's allegations "in the 'totality of the circumstances' constellation"; and under the good-faith exception to the exclusionary rule, suppression is not justified unless an affidavit is truly "bare bones." 925 F.3d 305, 310-313 (6th Cir. 2019) (en banc).

Just four years later, a panel of this Court has issued a decision that "directly conflicts" with *Christian* and other controlling Sixth Circuit caselaw. *See* 6th Cir. I.O.P. 35(a). The majority opinion, which never once used the words "defer" or "deference," analyzed the affidavit's allegations for individual sufficiency to find a lack of probable cause, and its strained efforts to distinguish controlling Sixth Circuit precedent make clear that the majority paid no deference to the magistrate judge's probable-cause determination. *United States v. Sanders*, 59 F.4th 232, 237-242 (6th Cir. 2023). The majority compounded its error when it then, "in effect, appl[ied] the probable-cause standard to the good-faith exception analysis," *id.* at 252 (Nalbandian, J., dissenting), assuming that a reasonable officer would adopt that same piecemeal analysis of the

allegations, *id.* at 242-247. In the end, the majority labeled as "bare bones" an affidavit that the dissenting judge found contained "more than enough" to establish probable cause and was "certainly not so obviously bare bones that no reasonable police officer could rely" on it. *Id.* at 250, 254 (Nalbandian, J., dissenting).

This extreme divergence of views reflects more than ordinary disagreement about what inferences can reasonably be drawn from factual allegations in a search-warrant affidavit. The majority opinion evinces a methodology that this Court has firmly and repeatedly rejected. *See Christian*, 925 F.3d 305; *United States v. Carpenter*, 360 F.3d 591 (6th Cir. 2004) (en banc); *United States v. Allen*, 211 F.3d 970 (6th Cir. 2000) (en banc). The Court should grant en banc review to realign its precedent on the proper framework for reviewing search warrants. Uniformity of the Court's decisions on these issues is essential to provide predictability and guidance to officers in the field, magistrates issuing warrants, and district courts deciding motions to suppress.

## STATEMENT OF THE CASE

Following a conditional guilty plea, Antwone Miguel Sanders was convicted of possessing with intent to distribute heroin, in violation 21 U.S.C. § 841(a)(1); possessing a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c); and possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

Judgment, R.82, #382.[1]  The district court sentenced him to 72 months and one day of imprisonment.  *Id.* at #383.  Finding that evidence recovered upon execution of a search warrant should have been suppressed, a divided panel of this Court reversed and vacated Sanders's conviction.  *Sanders*, 59 F.4th 232.

1.      The principal issue on appeal was whether the district court erred in denying a motion to suppress evidence seized from a Yellowstone Parkway apartment in Lexington, Kentucky.  Police seized the evidence pursuant to a warrant issued by a state magistrate authorizing a search of the apartment and Sanders's vehicle.  Warrant, R.27-2, #115.  To obtain the warrant, Officer Brandon Hazlewood of the Lexington Police Department submitted an affidavit containing these factual allegations:

- The affiant received information from a confidential informant (CI) that Sanders was selling "heroin/fentanyl" from the apartment.  The CI also provided a physical description of Sanders.

- Within the past two weeks, the affiant and another detective monitored a controlled buy in which the CI purchased a quantity of suspected heroin/fentanyl from Sanders.  The CI and Sanders met in a pre-determined location; the CI got in a silver Chrysler sedan registered to Sanders, purchased the suspected drugs, and then exited Sanders's car.  After the buy, police observed Sanders drive directly to the apartment.

- Within the past two days, the affiant and another detective monitored a second controlled buy in which the CI again purchased a quantity of suspected heroin/fentanyl from Sanders.  For this buy, police watched Sanders exit the apartment and then drive his car to the pre-determined

---

[1] References to the record are cited as "(Document description), (docket entry number), #(PAGE ID)."

location. The CI got in the car, purchased the suspected drugs, and exited the car. Police then observed Sanders drive directly back to the apartment. Affidavit, R.27-1, #83-85. The next day, the officers executed the search warrant and recovered controlled substances, drug paraphernalia, and firearms from the apartment. The indictment did not charge Sanders with distributing the drugs sold in the controlled buys. *Sanders*, 59 F.4th at 236.

2. Sanders moved to suppress the evidence recovered from the apartment, arguing that the warrant was not supported by probable cause and that the good-faith exception did not apply. The district court denied the motion. Mem. Opinion & Order, R.41, #258-269. With respect to probable cause, the court explained that it "is easy to infer" from the factual allegations that evidence of drug trafficking would be found in the apartment because "Sanders was observed traveling between the vehicle in which the drug transactions occurred and the residence[.]" *Id.* at #265. And, in any event, the district court found that the good-faith exception applied because "even if it were to be found lacking in some respects, [the affidavit] is not a 'mere bare bones' document." *Id.* at #267.

3. In a divided opinion, a panel of this Court reversed.

a. The panel majority (Clay & Moore, JJ.) held that the affidavit did not establish probable cause and that the good-faith exception to the exclusionary rule recognized in *United States v. Leon*, 468 U.S. 897 (1984), did not apply. *Sanders*, 59 F.4th at 237-247. With respect to probable cause, the majority first determined that the CI's

tip "carries little weight" because the affidavit does not include a statement "as to the veracity or reliability" of the CI and also "fails to set forth the CI's basis of knowledge." *Id.* at 238-240. The majority then found that the police surveillance was insufficient because it did not "establish[] that evidence of drug dealing existed in the Yellowstone Parkway apartment rather than in the vehicle in which the two controlled purchases occurred." *Id.* at 241. The majority observed that the affiant did not include "a statement . . . about his experience and training indicating that drug dealers tend to store evidence in their homes" and did not sufficiently investigate whether Sanders lived in the apartment. *Id.* at 240-241. Having found flaws with each factual allegation, the majority concluded that the affidavit "failed to establish a nexus between the drug activity and the Yellowstone Parkway apartment" and therefore "the police lacked probable cause to search the apartment." *Id.* at 242.

The majority also held that the affidavit was so "bare bones" that *Leon*'s good-faith exception did not apply. *Id.* at 242-247. The majority stated that, based on the flaws it had identified in the probable-cause analysis, no reasonable officer would have believed that the affidavit established even a "minimally sufficient nexus between the illegal activity and the place to be searched." *Id.* at 243 (internal quotation marks omitted).

b.      Judge Nalbandian dissented. *Id.* at 247-254. In his view, the CI's tip and police surveillance of Sanders traveling between the apartment and the car from which he conducted the controlled buys "combine to establish probable cause." *Id.* at 248.

5

Judge Nalbandian explained that "the majority's rejection of the CI's tip departs from [Sixth Circuit] caselaw," which holds that "when an informant is 'known to the police' and 'would be subject to prosecution for making a false report,' his statements are given significant weight." *Id.* at 249 (quoting *United States v. Dyer*, 580 F.3d 386, 391 (6th Cir. 2009)). Judge Nalbandian also found that, under Sixth Circuit precedent, the police surveillance of Sanders was "more than enough" to link the apartment to illegal drug activity. *Id.* at 250 ("[W]e've found that when the police see a defendant moving between a controlled buy and the identified residence, that provides a reasonable inference that he transported narcotics from the residence to the location of the drug sale." (internal quotation marks and brackets omitted)); *see also id.* at 250-251 (collecting cases).

Even if the affidavit fell short on probable cause, Judge Nalbandian would have applied the good-faith exception because "under [the *Christian*] standard and [Sixth Circuit] caselaw, this affidavit was not 'bare bones.'" *Id.* at 252. He criticized the majority opinion for "applying the probable-cause standard to the good-faith exception analysis," rather than focusing on whether the affidavit provided more than "'suspicions[] or conclusions'" or evidence that was "so vague as to be conclusory or meaningless." *Id.* (quoting *Christian*, 925 F.3d at 312, and *United States v. Frazier*, 423 F.3d 526, 537 (6th Cir. 2005)). Examining Sixth Circuit caselaw, Judge Nalbandian found that the affidavit in *Sanders* went "far beyond" those the Court had upheld in three cases and was "on par" with the affidavit in a fourth. *Id.* at 254.

Because Judge Nalbandian would have upheld the search, he also reached the two other issues presented in the appeal, the district court's denial of supplemental discovery and an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). Judge Nalbandian stated that he would affirm with respect to both issues, largely for the reasons stated in the government's brief, though he identified a harmless error with respect to the district court's supplemental discovery analysis. *Sanders*, 59 F.4th at 254 n.4.

## ARGUMENT

### A. Rehearing en banc is needed to realign the Court's precedent on probable cause.

As Judge Nalbandian explained in dissent, this Court's precedents establish the proper methodology for analyzing whether a search warrant is supported by probable cause. The majority opinion contravenes that precedent in two ways.

1. First, the majority did not give "great deference" to the magistrate's probable-cause determination as required by *Christian*, 925 F.3d at 310 (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). That deference means that the court's "job is not to reweigh the assertions in an affidavit but to ask whether the magistrate had a substantial basis for his conclusion." *Id.* "[L]ine-by-line scrutiny" is "inappropriate," and an affidavit should be "judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *Allen*, 211 F.3d at 973, 975 (internal quotation marks omitted).

The majority did not even acknowledge the proper standard of review, and its substantive analysis makes clear that it paid no deference to the magistrate judge's probable-cause determination. *Sanders*, 59 F.4th at 236-237 (setting out de novo standard of review). For example, the majority concluded that the CI's tip carries "little weight" because the affiant did not explicitly state that he had past experience with the CI or describe how the CI obtained his information. *Id.* at 238-239. But as Judge Nalbandian pointed out in dissent, under Sixth Circuit precedent, "any set of facts that support the accuracy of the information supplied by the informant" can substantiate a CI's reliability; there is no "rule that a CI's tip can only establish probable cause where a police officer issues a rote statement that the CI is reliable." *Id.* at 249 (internal quotation marks omitted). The affidavit here included allegations showing that the CI was "'known to the police'" and "someone who conducted controlled buys under police supervision" and documented "'substantial independent police corroboration'" through surveillance of Sanders traveling between the Yellowstone Parkway apartment and the controlled buys. *Id.* (quoting *Dyer*, 580 F.3d at 391). And indeed, in *Allen*, the en banc Court rejected the dissent's view in that case that a reviewing court itself "must [] weigh[] and consider[]" "*both* the veracity or reliability of the informant as well as the basis for knowledge of the tip." 211 F.3d at 986-987 (Clay, J., dissenting).

That the majority itself reweighed the allegations is also evident in its discussion of the inferences to be drawn from police surveillance. Under Sixth Circuit precedent, "when the police see a defendant moving between a controlled buy and the identified

residence, that provides a reasonable inference that he transported narcotics from the residence to the location of the drug sale." *Sanders*, 59 F.4th at 250 (Nalbandian, J., dissenting) (internal quotation marks and brackets omitted); *see also id.* at 250-251 (collecting cases). To distinguish that caselaw, the majority opinion relied on line-by-line scrutiny and minute factual differences, for example, that the affidavit does not allege that Sanders carried a bag out of the apartment, that he drove rather than walked to the controlled buys, and the question of whether the apartment was Sanders's residence, a point aptly described by Judge Nalbandian as a "red herring," *id.* at 251 n.3 (Nalbandian, J., dissenting). *See id.* at 241-242 (majority opinion distinguishing caselaw).

2. Second, the majority failed to heed *Christian*'s directive that "each factual allegation—whether ultimately deficient or not—is still a relevant data point in the 'totality of the circumstances' constellation, rather than an independent thing to be lined up and shot down one by one." *Christian*, 925 F.3d at 311. That approach makes sense because probable cause is a "fluid concept." *Gates,* 462 U.S. at 232. Accordingly, "a deficiency in one [allegation] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Id.* at 233.

The majority's hyper-technical analysis failed to consider how the allegations "combine to establish probable cause that evidence" of drug trafficking would be found in the Yellowstone Parkway apartment. *Sanders,* 59 F.4th at 248 (Nalbandian, J., dissenting). For example, in rejecting the CI's tip because it supposedly lacked veracity

or reliability, the majority did not consider whether the police surveillance, even if not independently sufficient to support probable cause, was adequate to corroborate the tip. *See id.* at 249-250 (Nalbandian, J., dissenting) (holding that the surveillance was "more than enough to link the CI's testimony with the address"). By the same token, the majority dismissed the surveillance because it did not "establish[] that evidence of drug dealing existed in the Yellowstone Parkway apartment rather than in the vehicle[.]" *Id.* at 241. Even if this were a deficiency, *but see District of Columbia v. Wesby*, 138 S. Ct. 577, 586, 588-589 (2018) (stating that probable cause is not a "'high bar'" and explaining that it does not require ruling out every alternative), the majority ignored how the known CI's tip that Sanders sold drugs from that apartment mitigated this concern. As in *Christian*, here, "the totality of the circumstances gave the officers plenty of reasons" to believe that the Yellowstone Parkway apartment contained evidence of illegal drug activity. *See Christian,* 925 F.3d at 311 (internal quotation marks omitted).

**B.      Rehearing en banc is needed to realign the Court's precedent on the good-faith exception.**

The majority's analysis of the good-faith exception is also deeply flawed and directly contrary to Supreme Court and Sixth Circuit precedent.

1.      As the Supreme Court has explained, the exclusionary rule is a "'judicially created remedy'" that is "designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Leon*, 468 U.S. at 906, 916. With respect to warrants, evidence should not be suppressed if it was obtained "in objectively reasonable

reliance" on a search warrant, even if that warrant was subsequently held invalid. *Id.* at 922. As relevant here, suppression would not be justified unless the supporting affidavit is "bare bones," *i.e.,* "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923 (internal quotation marks omitted). The "prototypical examples of *Leon*'s bare-bones affidavit" are statements that an affiant "'has cause to suspect and does believe'" or that the affiant "'received reliable information from a credible person and do[es] believe'" that contraband is in the specified location. *United States v. White*, 874 F.3d 490, 498 (6th Cir. 2017) (quoting *Nathanson v. United States*, 290 U.S. 41, 44 (1933), and *Aguilar v. Texas*, 378 U.S. 108, 109 (1964)). As in those examples, this Court "reserve[s] [the bare bones] label for an affidavit that merely states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *Christian*, 925 F.3d at 312 (internal quotation marks omitted).

The showing required for application of the good-faith exception is "'less demanding'" than the "'substantial basis'" threshold required to prove the existence of probable cause in the first place." *Id.* at 313 (quoting *Carpenter*, 360 F.3d at 595). In other words, "reasonable inferences that are not sufficient to sustain probable cause in the first place may suffice to save the ensuing search as objectively reasonable." *United States v. McCoy*, 905 F.3d 409, 420 (6th Cir. 2018) (quoting *White*, 874 F.3d at 500). The good-faith exception applies to an affidavit that falls short of probable cause so long as it provides a "minimally sufficient nexus between the illegal activity and the place to be

searched." *Carpenter*, 360 F.3d at 596. "[S]ome modicum of evidence, however slight[,] between the criminal activity at issue and the place to be searched" will suffice. *United States v. Reed*, 993 F.3d 441, 451 (6th Cir.) (internal quotation marks omitted), *cert. denied*, 142 S. Ct. 289 (2021).

2. The majority's treatment of the good-faith exception cannot be squared with this precedent. The majority held that officers' reliance on the warrant was "objectively unreasonable" because "there was an insufficient basis to conclude that the apartment in question was [Sanders's] residence or that there was evidence of drug trafficking" in the apartment. *Sanders*, 59 F.4th at 243-244 (internal quotation marks omitted). In support of that conclusion, the majority assumed that a reasonable officer would adopt its same (flawed) probable-cause analysis and therefore "understand that further corroboration . . . was needed before probable cause could be established." *Id.* at 245; *see, e.g., id.* (opining that a reasonable officer would disregard the known CI's tip "due to its minimal trustworthiness and reliability," ignoring that the officer had worked with the CI on two controlled buys); *id.* (stating that a reasonable officer would consider the surveillance to be "infrequent" and inadequate to support probable cause).

"[T]he majority is, in effect, applying the probable-cause standard to the good-faith exception analysis." *Id.* at 252 (Nalbandian, J., dissenting). But as described above, the tests for probable cause and the good-faith exception are *not* the same. *See Carpenter*, 360 F.3d at 595; *McCoy*, 905 F.3d at 420; *Reed*, 993 F.3d at 451. And the specific factual allegations in this affidavit, including the tip from a known CI that Sanders sold drugs

from the apartment, two controlled buys, and the police surveillance, certainly "provide[] more than the modicum of evidence that [Sixth Circuit] caselaw requires." *Sanders*, 59 F.4th at 254 (internal quotation marks omitted) (Nalbandian, J., dissenting); *see also Christian*, 925 F.3d at 313 ("Although one can split hairs with the affidavit in this case, it is impossible to deny that it contains factual allegations, not just suspicions or conclusions. Importantly, each factual allegation, regardless of any infirmities, at least purports to link [the defendant] to drug trafficking at [the place to be searched].").

This Court has recognized the critical importance of maintaining "daylight between the 'bare bones' and 'substantial basis' standards if *Leon*'s good-faith exception is to strike the desired balance between safeguarding Fourth Amendment rights and facilitating the criminal justice system's truth-seeking function." *United States v. Gilbert*, 952 F.3d 759, 763 (6th Cir. 2020); *Christian*, 925 F.3d at 318 (Thapar, J., concurring) ("Too often courts raise the *Leon* bar, making it practically indistinguishable from the probable cause standard itself."). "'[W]hen the police act with an objectively "reasonable good-faith belief" that their conduct is lawful,' excluding evidence recovered as a result of a technically deficient affidavit serves no useful purpose under the exclusionary rule." *Gilbert*, 952 F.3d at 763-764 (quoting *Davis v. United States*, 564 U.S. 229, 238 (2011)).

Sitting en banc, this Court has previously rejected the view that the probable-cause and good-faith analyses should be merged. *Cf. Carpenter*, 360 F.3d at 602 (Moore, J., dissenting) (disagreeing with the en banc Court's application of the good-faith

exception and opining that "[t]he mere existence of some nexus will not preserve evidence from the exclusionary rule"); *Allen*, 211 F.3d at 987 (Clay, J., dissenting) ("I believe that one cannot legally or logically agree that the affidavit was so woefully lacking in any indicia of specificity that it failed to provide the magistrate with a substantial basis to conclude that probable cause existed to allow the warrant to issue, and yet conclude that based upon the same woefully lacking affidavit, [the affiant's] belief in the warrant's existence was reasonable."). The en banc Court should do the same here.

## CONCLUSION

For the foregoing reasons, the petition for rehearing en banc should be granted. There were two other issues raised in the appeal with respect to the district court's denial of a *Franks* hearing and supplemental discovery. In our view, these issues do not merit en banc review. However, if the Court grants rehearing, we would briefly urge affirmance on both issues because, as described in the dissent, any errors would be harmless. *Sanders*, 59 F.4th at 254 n.4 (Nalbandian, J., dissenting).

Respectfully submitted,

DATED:    MARCH 22, 2023

/s/ Sofia M. Vickery
SOFIA M. VICKERY
Attorney, Criminal Appellate Section
U.S. Department of Justice
950 Pennsylvania Ave., NW
Suite 1264
Washington, D.C. 20530
(202) 305-7408
Sofia.Vickery@usdoj.gov

# CERTIFICATE OF COMPLIANCE

I hereby certify that that this petition does not exceed 15 pages, excluding the parts of the petition exempted by Federal Rule of Appellate Procedure 32 and has been prepared in a proportionally spaced, 14-point typeface using Microsoft Word for Office 365 word processing software.

DATED:  MARCH 22, 2023

/s/ Sofia M. Vickery
SOFIA M. VICKERY
Attorney, Criminal Appellate Section
U.S. Department of Justice
950 Pennsylvania Ave., NW
Suite 1264
Washington, D.C. 20530
(202) 305-7408
Sofia.Vickery@usdoj.gov

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANTWONE MIGUEL SANDERS,

*Defendant-Appellant.*

⎫
⎪
⎪
⎬  No. 21-5945
⎪
⎪
⎭

───────────────

Appeal from the United States District Court for the Eastern District of Kentucky at Lexington.
No. 5:20-cr-00009-1—Joseph M. Hood, District Judge.

Decided and Filed:  February 6, 2023

Before:  MOORE, CLAY, and NALBANDIAN, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:**  Jarrod J. Beck, LAW OFFICE OF JARROD J. BECK, PLLC, Lexington, Kentucky, for Appellant. Lauren Tanner Bradley, Charles P. Wisdom, Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

CLAY, J., delivered the opinion of the court in which MOORE, J., joined. NALBANDIAN, J. (pp. 21–31), delivered a separate dissenting opinion.

───────────────

## OPINION

───────────────

CLAY, Circuit Judge.  Defendant Antwone Sanders appeals from the judgment of conviction and sentence entered by the district court, pursuant to Defendant's conditional guilty plea to one count of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1), one count of possession of a firearm in furtherance of a drug trafficking

offense in violation of 18 U.S.C. § 924(c), and one count of possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1), wherein Defendant reserved the right to appeal the district court's denial of his motion to suppress the evidence that the Lexington Police Department acquired from a search of Defendant's residence. For the reasons set forth below, we **REVERSE** the district court's order denying Defendant's motion to suppress and **VACATE** Defendant's convictions and sentence. We **REMAND** for further proceedings consistent with this opinion.

## BACKGROUND

### Factual Background

On April 24, 2019, Officer Brandon Hazlewood with the Lexington Police Department applied to a judge of the Fayette District Court in Fayette County, Kentucky, for a warrant relating to Antwone Sanders. In the affidavit in support of the warrant, Officer Hazlewood set out the following information.

On April 17, 2019, a confidential informant ("CI") advised Officer Hazlewood that Antwone Sanders was selling heroin/fentanyl from an apartment located on Yellowstone Parkway in Lexington, Kentucky. Acting on this information, Officer Hazlewood set up two controlled purchases.

To set up the first purchase, Officer Hazlewood and Detective Brian Cobb met with the CI and searched the CI's person and vehicle. The officers provided the CI with money for the purchase, and the CI proceeded to a predetermined location to purchase heroin from Antwone Sanders. Sanders arrived at the location in a silver Chrysler vehicle with Kentucky registration plates. Officer Hazlewood observed the CI enter Sanders' vehicle, monitored the controlled purchase, and observed the CI exit Sanders' vehicle. Following the controlled purchase, the CI provided Officer Hazlewood with a quantity of suspected heroin/fentanyl and advised that he obtained it from Sanders. Officer Hazlewood again searched the CI and the CI's vehicle and located no contraband. Meanwhile, other officers followed the silver Chrysler, which Sanders drove without stopping to the Yellowstone Parkway apartment.

Two days before Officer Hazlewood authored his affidavit, he, along with Detective Sinnott, set up a second controlled buy.  The second purchase proceeded in a manner similar to the first.  After meeting with the officers and receiving money for the purchase, the CI proceeded to a predetermined location to purchase heroin and fentanyl from Sanders.  The CI made this purchase from Sanders inside Sanders' vehicle, the silver Chrysler, and again delivered the suspected heroin and fentanyl to Officer Hazlewood.

Before the second controlled purchase, Detective Hart surveilled the Yellowstone Parkway apartment.  The silver Chrysler was parked outside the apartment.  Detective Hart observed Sanders exit the apartment and enter the vehicle.  Other officers followed the vehicle as it traveled from the apartment directly to the predetermined meeting location with the CI.  After the controlled purchase, officers again followed the vehicle as it traveled directly back to the Yellowstone Parkway apartment.  Officers observed Sanders exit the vehicle and enter the apartment.

Based on this information, Officer Hazlewood applied for a warrant to search the Yellowstone Parkway apartment, the silver Chrysler (registered to Sanders), and Sanders' person.  The affidavit in support of the warrant included Officer Hazlewood's averment that he had received a tip from a CI that Defendant was selling heroin/fentanyl from the Yellowstone Parkway apartment and described the investigation officers conducted thereafter.  The affidavit contained no information pertaining to the reliability of the CI who provided the tip.

The judge granted Officer Hazlewood's warrant application on April 24, 2019.  Officers executed the search warrant the next day.  The search of the Yellowstone Parkway apartment revealed controlled substances, drug paraphernalia, and firearms.  Thereafter, on January 16, 2020, a federal grand jury indicted Defendant in the Eastern District of Kentucky on one count of possession with the intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1); one count of possession of a controlled substance, in violation of 21 U.S.C. § 844(a)(1); one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  The indictment did not charge Sanders with distributing the drugs sold to the CI during the two controlled purchases.

**Procedural Background**

Defendant filed two motions that are the subject of his appeal.

First, Defendant moved for supplemental discovery of "case reports and drug evidence relating to the two controlled buys referenced in the search warrant affidavit" for the Yellowstone Parkway apartment.  (Def. Mot. Suppl. Disc., R. 25, Page ID #63.)  The district court denied the discovery motion, determining that the evidence pertaining to the controlled purchases was privileged to the extent disclosing it would reveal the CI's identity and that the evidence was not material to the defense.

Second, Defendant moved to suppress all evidence and statements that were obtained when executing the search warrant, and also moved for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to challenge the accuracy of Detective Hart's surveillance referenced in the affidavit.  The district court denied the motion to conduct a *Franks* hearing and denied the motion to suppress, determining that probable cause supported the search warrant.  In the alternative, the district court ruled that the "good faith" exception to suppression, set forth in *United States v. Leon*, 468 U.S. 897 (1984), applied.  The district court did not hold an evidentiary hearing before denying the motion to suppress.

Following the district court's rulings, Defendant pleaded guilty, but reserved the right in his plea agreement to appeal the suppression issue.  On September 22, 2021, the district court entered judgment and sentenced Defendant to 72 months in prison.  This appeal followed.

**DISCUSSION**

**Standard of Review**

"Federal constitutional law applies to a state search warrant that is challenged in federal court."  *United States v. Helton*, 35 F.4th 511, 517 (6th Cir. 2022).  "In reviewing the denial of a motion to suppress where the district court did not hold an evidentiary hearing, we 'review de novo the court's legal conclusion that the affidavit provided probable cause.'"  *United States v. Brown*, 828 F.3d 375, 381 (6th Cir. 2016) (quoting *United States v. Brown*, 732 F3d 569, 572 (6th Cir. 2013)).

## Analysis

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A "state search warrant being challenged in a federal court must be judged by federal constitutional standards." *United States v. McManus*, 719 F.2d 1395, 1397 (6th Cir. 1983) (citing *Elkins v. United States*, 364 U.S. 206 (1960)). "Probable cause is defined as 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion[]' that 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990); *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

"[T]o establish probable cause for a search, an affidavit must show a likelihood of two things: first, that the items sought are 'seizable by virtue of being connected with criminal activity'; and second, 'that the items will be found in the place to be searched.'" *United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 555 n.6 (1978)); *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009). "The nexus between 'criminal activity' and the item to be seized is 'automatic[]' when the object of the search is 'contraband.'" *Church*, 823 F.3d at 355 (quoting *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967)). "A police request to search for illegal drugs therefore needs to satisfy only the second showing for a valid warrant: 'a fair probability' that the drugs 'will be found in a particular place.'" *Id.* (quoting *Gates*, 462 U.S. at 238). "There must, in other words, be a 'nexus between the place to be searched and the evidence sought.'" *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quoting *United States v. Van Shutters*, 163 F.3d 331, 3365–337 (6th Cir. 1998)). The connection between the residence and the evidence of criminal activity must be specific and concrete, not "vague" or "generalized." *Id.* at 595. Whether an affidavit establishes a proper nexus is resolved by examining the totality of the circumstances presented. *Gates*, 462 U.S. at 238.

On appeal, Defendant asks this Court to reverse the district court's denial of the motion to suppress because the affidavit lacked probable cause and failed to set forth a nexus to the

Yellowstone Parkway apartment.  We have subject matter jurisdiction to adjudicate this appeal pursuant to 28 U.S.C. § 1291.  We conclude that the evidence and statements obtained from the search of the Yellowstone Parkway apartment should have been suppressed because the warrant affidavit failed to establish the existence of probable cause and is not saved by the good faith exception.

**A. Probable Cause**

To be valid, a search warrant application must show more than that a person connected with a property is suspected of a crime.  *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978).  It must also establish that "there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought."  *Id.*

In this case, the affiant included few facts that support a nexus between the drug evidence officers sought and the Yellowstone Parkway apartment that the officers searched.  Initially, the affiant stated that he received a tip from a confidential informant that "[Defendant] was selling Heroin/Fentanyl from [the Yellowstone Parkway apartment]."  (Aff., R. 25-3, Page ID #159.)  Next, pertaining to the first controlled purchase, officers observed Defendant drive directly from the controlled purchase location to the Yellowstone Parkway apartment.  Finally, pertaining to the second controlled purchase, officers observed Defendant exit the Yellowstone Parkway apartment and drive directly to the controlled purchase location, and then drive directly back from that location to the Yellowstone Parkway apartment, which Defendant then entered.

Defendant argues that this information is too vague or speculative to support the search warrant for the Yellowstone Parkway apartment.  Defendant primarily relies on *United States v. Higgins*, 557 F.3d 381, 390 (6th Cir. 2009), and *United States v. Brown*, 828 F.3d 375, 383 (6th Cir. 2016), where in both cases the court determined there was an insufficient nexus to support the search warrant.  In *Higgins*, an informant identified the defendant's residence as the site of a drug operation.  557 F.3d at 390.  However, the police did not establish the informant's reliability and the affidavit did not "assert that that the informant had been inside [the defendant's] apartment, that he had ever seen drugs or other evidence inside [the defendant's] apartment," or that "the informant had seen drugs or other evidence in or around [the

defendant's] apartment." *Id.* Similarly, in *Brown*, though the defendant's car was registered to the defendant's residence and tested positively for narcotics during a canine search, the affidavit did not suggest that "a reliable confidential informant had purchased drugs" at the defendant's residence or that "the police had ever conducted surveillance" there. *Brown*, 828 F.3d at 382–383.

Like the affidavits in *Brown* and *Higgins*, Officer Hazlewood's affidavit contains an insufficient nexus to support the search warrant. The CI's tip is the only direct connection between Defendant's drug activity and the Yellowstone Parkway apartment. However, Officer Hazlewood's affidavit gives no indication as to the veracity or reliability of the information obtained. Officer Hazlewood did not state that he relied on or worked with the CI on prior occasions or that the CI had proved reliable in the past. Further, he did not assert any belief concerning the reliability or veracity of the CI's tip, let alone provide any factual basis by which the magistrate could assess its reliability or veracity. *See United States v. Helton*, 314 F.3d 812, 822 (6th Cir. 2003) (explaining that, under Sixth Circuit precedent, an affidavit "must contain a statement about some of the underlying circumstances indicating the informant was credible or that his information was reliable" (quoting *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999))); *see also Higgins*, 557 F.3d at 389–390 (finding insufficient nexus where the affidavit did not attest to the informant's reliability, even though the informant was known to the affiant and the issuing magistrate).

Further, the affidavit fails to set forth the CI's basis of knowledge, i.e., "the particular means by which an informant obtained his information." *Smith*, 182 F.3d at 477 (citing *Gates*, 462 U.S. at 228). Instead, the affidavit baldly states that the "affiant received information from a Confidential Informant (CI) that a subject by the name of Antwone Sanders was selling Heroin/Fentanyl from 2852 Yellowstone Parkway Apartment D, Lexington, KY 40517." (Aff., R. 25-3, Page ID #159.) This statement does nothing to establish the basis of knowledge of the CI, such as indicating that the CI purchased drugs at the Yellowstone Parkway apartment or observed drugs within the apartment. *See Helton*, 314 F.3d at 822 ("[T]ip [that] was sparse in relevant detail . . . loses persuasive value."); *United States v. Parker*, 4 F. App'x 282, 286 (6th Cir. 2001) (Clay, J., dissenting) ("The affidavit . . . failed to indicate . . . that the informant had

observed any evidence of illegal sales on the premises, or had reason to believe that the illegal activity was continuing at the residence."). Without any showing of the CI's reliability, and without any statement of firsthand knowledge about the alleged criminal activity at the Yellowstone Parkway apartment, the CI's tip carries little weight in the probable cause analysis. *Helton*, 314 F.3d at 821–822.

The absence of reliability, veracity, and basis of knowledge does not end the inquiry; an affidavit that fails to establish these three elements might nevertheless "support a finding of probable cause, under the totality of the circumstances, if it includes sufficient corroborating information." *United States v. Woosley*, 361 F.3d 924, 927 (6th Cir. 2004); *United States v. Howard*, 632 F. App'x 795, 804 (6th Cir. 2015) ("What an informant and her tip lack in intrinsic indicia of credibility, however, police must make up for in corroboration."). The primary piece of purportedly corroborating evidence is the officers' surveillance of Defendant's travel between the controlled purchase locations and the Yellowstone Parkway apartment. However, Defendant's entering and exiting of an apartment, alone, provides no indication of criminal activity at the apartment.

Our en banc court has made clear that an affidavit lacks probable cause to search a residence when "it fail[s] to set forth sufficient facts that incriminating evidence would be found *there*, rather than in some other place." *Carpenter*, 360 F.3d at 594. In determining that probable cause supported the search warrant, the district court improperly relied on *United States v. Sumlin*, 956 F.3d 879 (6th Cir. 2020), to draw an inference about nexus. Based on *Sumlin*, the district court reasoned that it is sufficient for the nexus requirement in a probable cause determination if the affidavit contains claims that "(1) a person is an active drug dealer, (2) the residence belongs to the drug dealer, and (3) drug dealers tend to store drugs in their home." (Op. & Order, R. 41, Page ID #264 (citing *Sumlin*, 956 F.3d at 886)).

The district court's reading of *Sumlin* is incorrect and an oversimplification of the complex caselaw in this area. This Court has "never held . . . that a suspect's status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home." *Brown*, 828 F.3d at 383 (quoting *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005)); *see, e.g.*, *United States v. Fitzgerald*, 754 F. App'x 351, 359, 361 (6th Cir. 2018); *United States*

*v. Bethal*, 245 F. App'x 460, 466–67 (6th Cir. 2007). The *Sumlin* Court held that to establish probable cause to search a residence, the government's affidavit needed to demonstrate "(1) that [the defendant] was trafficking drugs; (2) that [the defendant] lived at the [residence to be searched]; and (3) that evidence of drug trafficking would be found at [the defendant's] residence." *Sumlin*, 956 F.3d at 885. The district court stated, incorrectly, that the third prong is a "trivial bar to pass" that requires only that the affiant assert, based on experience and training, that drug dealers routinely keep evidence of drug dealing at their residences. To the contrary, additional specific "evidence showing a connection between [the] alleged drug trafficking and the" residence is required. *Sumlin*, 956 F.3d at 887; *see also Brown*, 828 F.3d at 384 ("[I]f the affidavit fails to include facts that directly connect the residence with the suspected drug dealing activity, or the evidence of this connection is unreliable, it cannot be inferred that drugs will be found in the defendant's home—even if the defendant is a known drug dealer."); *United States v. Grant*, No. 21-3686, 2023 WL 119399, at *3 (6th Cir. Jan. 6, 2023) ("[W]e have inferred a nexus between a known drug trafficker and a residence when there is strong evidence linking the suspect to the residence, and there is some additional evidence of drug activity at the residence."). In *Grant*, the Court noted that our caselaw remains "unsettled" regarding the amount of "additional evidence of drug activity . . . needed for a nexus to exist," but explained that "[a]t a minimum, we have required 'facts showing that the residence had been used in drug trafficking, such as an informant who observed drug deals or drug paraphernalia in or around the residence.'" *Id.* (quoting *Brown*, 828 F.3d at 383).

In any case, *Sumlin* does not support a finding of probable cause in this case. Defendant does not dispute that the information in the affidavit sufficed to establish probable cause to believe that Defendant engaged in dealing drugs. However, Defendant is correct that the affidavit fails to establish probable cause to believe either that Defendant lived at the Yellowstone Parkway apartment or that evidence of drug trafficking would be found at the apartment.

Considering the second prong, the affidavit did not establish probable cause to believe that Defendant resided at the Yellowstone Parkway apartment. Over the course of one to two weeks, on two occasions, officers observed Defendant drive to the Yellowstone Parkway

apartment.  According to the affidavit, the officers observed him enter it on only one of those occasions, following the second controlled purchase.  On another occasion, before the second controlled purchase, one officer observed him exit the Yellowstone Parkway apartment.  This is scant evidence that the apartment was Defendant's residence, as opposed to, for instance, the residence of a friend or acquaintance.

Officers conducted no further investigation on this question.  The lack of investigation stands in stark contrast to the investigation in *Sumlin*, which yielded facts establishing probable cause to believe that the defendant lived at the residence to be searched.  *See Sumlin*, 956 F.3d at 886 (officers observed the defendant's car parked in the driveway of the residence on multiple days, the utilities at the residence were under the name of the defendant's then-girlfriend, police had earlier responded to a domestic disturbance at the residence involving the defendant and his then-girlfriend, and the mother of the defendant's then-girlfriend told the police that the defendant lived at the residence).

Turning to the connection between the alleged drug trafficking and the residence, the affidavit fails to include even a statement by the affiant officer about his experience and training indicating that drug dealers tend to store evidence in their homes.  Though the affidavit contains no statement to this effect, the district court reasoned that, based on the affiant's statement that he believed evidence of drug trafficking would be located at the Yellowstone Parkway apartment, the court could "infer" the "missing premise" from the stated facts.  (Op. & Order, R. 41, Page ID #265.)  But review of the "evidence supporting probable cause is limited to the information presented in the four corners of the affidavit."  *Berry*, 565 F.3d at 338.  In the affidavit at issue in this case, the affiant officer made no assertion about this connection, nor any statement about his training and experience.  Thus, the affidavit makes no indication as to what caused the affiant to "believe[]" that evidence of drug trafficking would be located at the Yellowstone Parkway apartment.  Probable cause is not satisfied by an officer's mere "hunch." *See United States v. Arvizu*, 534 U.S. 266, 274 (2002) (noting that a hunch is insufficient to support a finding of reasonable suspicion for a *Terry* stop, and that the reasonable suspicion standard is easier to satisfy than the probable cause standard).  *See also Brown*, 828 F.3d at 383 & n.2 (discussing precedent).

The district court reasoned that officers may "connect the dots" between "a drug dealer and their residence." (R. 41, Page ID #265.) This inference can be drawn permissibly in limited circumstances, such as in *Sumlin*, 956 F.3d at 886–87, where the affidavit established probable cause that the defendant engaged in drug trafficking and lived at the residence to be searched, the affiant officer attested to his experience indicating that drugs would be found there, and there was some "evidence showing a connection between [the defendant's] alleged drug trafficking and the" residence. *See also United States v. Miggins*, 302 F.3d 384, 388 (6th Cir. 2002) (finding that probable cause was established where affidavit "clearly established a connection between [the co-defendant's residence] where the package . . . containing one kilogram of cocaine was delivered and [the defendant's] apartment."). Thus, from an affidavit establishing probable cause to believe that a defendant is engaged currently in drug trafficking and resides at the place to be searched, "judges [may] infer a fair probability of finding evidence in [the] residence" only if there is "some reliable evidence connecting the known drug dealer's ongoing criminal activity to the residence[,] that is . . . [a] showing that the residence had been used in drug trafficking." *Brown*, 828 F.3d at 383; *Sumlin*, 956 F.3d at 886–87.

The government's argument that the officers' observations of Defendant traveling between the Yellowstone Parkway apartment and the locations where the drug transactions occurred suffices to establish a sufficient nexus fails. The government relies on *United States v. Houser*, 752 F. App'x 223 (6th Cir. 2018). In *Houser*, the court determined probable cause supported the search warrant for an apartment where officers observed the defendant exit his apartment unit, engage in a drug transaction on the side of the apartment building, and then immediately return to his apartment unit. *Id.* at 225–226. In contrast, in this case, the affidavit does not show any drug activity on or near the premises of the Yellowstone Parkway apartment. Rather, Defendant drove a vehicle to separate locations. Nothing in the affidavit establishes that evidence of drug dealing existed in the Yellowstone Parkway apartment rather than in the vehicle in which the two controlled purchases occurred.

In another case on which the government relies, *United States v. Miller*, 850 F. App'x 370, 373–374 (6th Cir. 2021), the court held probable cause supported the warrant. In *Miller*, after previously conducting a controlled purchase that resulted in defendant's arrest with a large

quantity of drugs, officers observed the defendant exit and reenter the apartment at which they suspected he had been staying. *Id.* at 371. Further, officers observed the defendant exiting the apartment carrying a white plastic grocery bag and stopping to check the bag's contents as he walked to a vehicle. *Id.* at 371. The defendant then drove the vehicle to another location where he engaged in drug transactions from his vehicle. *Id.* at 372. When officers arrested the defendant and searched his vehicle, officers discovered a firearm and cash in the white plastic bag that the defendant had been carrying from the apartment. *Id.* Finally, the affiant officer averred that "in her experience, drug dealers often keep firearms, drugs, and drug proceeds in their homes." *Id.* The court held that, on these facts, the "direct line from the apartment to the drug deals sufficed to create a fair probability that evidence would be found in the apartment." *Id.* at 374.

The *Miller* Court held that it was not necessary for the probable cause finding that the warrant indicate that the defendant lived at the apartment, given the direct line established by the "evidence that [the defendant] carried a white grocery bag out of this apartment and traveled straight to the site of the drug deals." *Id.* Importantly, the warrant in *Miller* contained more facts indicating that the defendant lived at the apartment than contained in the affidavit at issue in this case. In *Miller*, in addition to previously suspecting the defendant lived at the apartment, and observing him entering and exiting, the officers conducted additional surveillance of the apartment after the defendant's arrest and observed no other person entering or exiting it. *Id.* at 372. In this case, officers conducted no additional surveillance of the Yellowstone Parkway apartment nor any other additional investigation of Defendant's connection to the apartment.

Additionally, this case is further distinguishable from *Miller* because Defendant was not seen carrying a bag when he exited the apartment to travel to the controlled purchase location. In *Miller*, the defendant's transportation of the white bag containing a firearm and cash from the apartment to the drug deal was key to the court's holding that there was a "direct line from the apartment to the drug deals," sufficient to establish the nexus. *Id.* at 374 ("His direct path from the apartment to the drug deals (carrying a white bag) was objective evidence connecting the apartment to that drug dealing under our caselaw."); *see also United States v. Crawford*, 943 F.3d 297, 303 & 308–309 (6th Cir. 2019) (finding probable cause to search an apartment where

officers observed the defendant carrying a small black duffle bag out of the apartment before driving to the location of the controlled purchase, and an informant had previously told officers that the defendant stored his drug supply in a duffle bag).[1]

Officer Hazlewood's affidavit failed to establish a nexus between the drug activity and the Yellowstone Parkway apartment.  Because we conclude that the police lacked probable cause to search the apartment on this ground, deciding whether the information supporting the warrant was stale, as argued by Defendant, is unnecessary.  *Brown*, 828 F.3d at 385.

**B.  Good Faith Exception**

The government argues that even if the warrant lacked probable cause, the evidence resulting from the search should not be suppressed, and Defendant's convictions should still be upheld under the good faith exception to the exclusionary rule announced in *United States v. Leon*, 468 U.S. 897 (1984).  We disagree.

In *Leon*, the Supreme Court held that the Fourth Amendment exclusionary rule does not apply when police officers rely in good faith on a warrant that is ultimately determined to lack probable cause.  *Id*. at 913.  In determining whether police acted in good faith, the "inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization."  *Id*. at 922 n. 23.

To aid courts in resolving this question, *Leon* outlined four circumstances in which an officer's reliance would not be objectively reasonable:  (1) when the affidavit supporting the search warrant contains information "that the affiant knows (or is reckless in not knowing) contains false information;" (2) when the magistrate who issued the search warrant wholly abandoned his or her "neutral and detached role;" (3) "when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable;" or (4) "when the

---

[1]In support of its argument, the government also cites *United States v. Reed*, 993 F.3d 441 (6th Cir. 2021). Because the *Reed* Court resolved the case based on the good faith exception to the exclusionary rule and did "not resolve th[e] probable-cause question," *id.* at 450–452, the case provides little guidance on the probable cause question.

warrant is so facially deficient that it cannot reasonably be presumed to be valid." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (citing *Leon*, 468 U.S. at 914–23).

At issue in this case is the third limitation on the good faith exception.[2]  This limitation prevents introduction of evidence seized under a warrant that is issued on the basis of a "bare bones" affidavit.  *Laughton*, 409 F.3d at 748.  A bare bones affidavit is one that merely "states only 'suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'" *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) (quoting *Laughton*, 409 F.3d at 748).  In contrast, an affidavit is not bare bones if, though falling short of the probable cause nexus standard, it "contain[s] a minimally sufficient nexus between the illegal activity and the place to be searched." *See Carpenter*, 360 F.3d at 596.  This addresses situations when the warrant's affidavit falls short of establishing nexus under the probable cause standard but contains enough of a nexus such that a reasonable officer would nonetheless believe that the warrant is supported by probable cause. *See id*. at 595.  For the limitation to apply, "the officer's reliance on the magistrate's probable-cause determination . . . must be objectively reasonable." *Leon*, 468 U.S. at 922.

The district court held, in the alternative, that if probable cause did not support the warrant, the evidence would be admissible pursuant to the good faith exception because the affidavit was not "bare bones."  (Op. & Order, R. 41, Page ID # 267.)  The court reasoned that there was a minimal nexus between Defendant's "status as a drug dealer and his residence," and further that the officers reasonably relied on the warrant because the "law regarding search warrants for residences of known drug dealers is nuanced and often contradictory." (*Id.* at Page ID ##267–268.)  The problem here is that there was an insufficient basis to conclude that the apartment in question was Defendant's residence or that there was evidence of drug trafficking at the residence to be searched.

---

[2]Defendant also argues that the first limitation applies because the affidavit may contain false statements in violation of *Franks v. Delaware*, 438 U.S. 154 (1978).  However, Defendant produced no evidence to show that the affiant Officer Hazlewood made or included therein any statements by government officials that were false or were made with reckless disregard for truth.  Accordingly, this argument relating to the good faith exception also fails.

On appeal, the government argues that the officers reasonably relied on the search warrant because it contends that *United States v. Reed*, 993 F.3d 441, 444–445 (6th Cir. 2021), requires the application of the exception in cases where the affidavit lacks a sufficient nexus because our nexus jurisprudence is "unsettled." Though it is true that the *Reed* Court recognized the different approaches taken in some of our probable cause cases regarding when an individual's drug trafficking activity creates probable cause to believe that drugs will be found at his or her residence and in what limited circumstances inferences can be drawn to support the requisite nexus, that was not the Court's sole reason for applying the good faith exception. *Id.* at 444–46, 451–54. In addition to considering the law's complexity, in its review of only one of the three affidavits that were issued together and cross referenced with one another, the *Reed* Court concluded that officers reasonably relied on the issuing judge's determination regarding the third affidavit because it established probable cause to believe that the defendant was an active drug dealer engaged in recent drug activities, established probable cause to believe that the defendant lived at the place to be searched, relied on tips from a CI whose reliability had been attested to in one of the other unchallenged affidavits, and detailed the affiant's experience investigating drug crimes and his belief that drugs would be found at the residence. *Id.* *Reed* does not require (nor could it) that courts apply the good faith exception merely because the relevant Fourth Amendment jurisprudence is complex or unsettled.

A review of the information presented in the affidavit shows the clear lack of factual circumstances that would support a minimally sufficient nexus. As discussed above, regarding the CI's tip, Officer Hazlewood's affidavit gives no indication of the veracity or reliability of the information obtained, or the factual basis underlying the CI's knowledge. *Cf. Higgins*, 557 F.3d at 385, 391 (applying the good faith exception to a search of defendant's home address where the informant told the officers that he had personally purchased drugs from the defendant at the defendant's address earlier the same day and the tip was corroborated in multiple ways).

In light of these shortcomings, "no reasonable officer would place much, if any, weight on" the CI's tip. *Helton*, 314 F.3d at 821–822, 824 (concluding that an unreliable informant's tips "do not merit much weight in the probable cause determination" and finding the informant's tip too defective to apply the good faith exception). "[A]t a minimum, a reasonable officer

would have sought to corroborate" the tip further.  *Id.* at 824; *see also Frazier*, 423 F.3d at 532 ("[I]n the absence of any indicia of the informants' reliability, courts insist that the affidavit contain substantial independent police corroboration.").   In this case, the independent investigation did little to corroborate the tip and confirm that drugs would be found in the Yellowstone Parkway apartment.  The officers did not, for instance, surveil the apartment for indications of drug dealing occurring at the residence or conduct a trash pull.  *See, e.g.*, *United States v. McPhearson*, 469 F.3d 518, 527 (6th Cir. 2006) (noting that "heavy traffic to and from the residence" is a hallmark of drug dealing); *United States v. Abernathy*, 843 F.3d 243, 251–52 (6th Cir. 2016) (holding that drug paraphernalia recovered from a trash pull supported a finding of probable cause).

Because a reasonable officer would know that the CI's tip should be given little weight, if any, due to its minimal trustworthiness and reliability, no reasonable officer would believe that the affidavit established probable cause to search the Yellowstone Parkway apartment.  The sparse connection between Defendant and the Yellowstone Parkway apartment highlights the affidavit's clear deficiencies.  Beyond the uncorroborated tip, the affidavit lacked any factual allegations about drug trafficking occurring at the residence and a reasonable officer knows that Defendant's infrequent travel between an apartment and locations where drug dealing occurs falls short of establishing probable cause that the apartment contains evidence of a crime.

Further, a reasonable officer knows that a Defendant exiting and entering an apartment on a few occasions does not establish that Defendant lives at that apartment.  In considering the reasonableness of the officers' reliance on the warrant, it is impossible to ignore the ease with which officers could have uncovered Defendant's connection to the Yellowstone Parkway apartment.  "A simple public records inquiry, further research into the name on the utilities accounts registered at the address, or additional surveillance would have provided clear evidence" of whether Defendant actually lived at the Yellowstone Parkway apartment.  *United States v. Washington*, 380 F.3d 236, 251 (6th Cir. 2004) (Moore, J., dissenting).  In *Mills v. City of Barbourville*, 389 F.3d 568, 576–77 (6th Cir. 2004), because the affidavit lacked any information indicating that the place to be searched was connected to the defendant and was not supported by a statement from the CI that "identified the residence as the place of the drug

purchase or through independent investigation corroborating that it was the home of" the defendant, we determined that neither probable cause existed nor the good faith exception applied. Any reasonable officer would have known that it is illegal to search a residence when it is not clear that the suspect resides there or conducts illegal drug activity there, because there is not a high probability that the desired evidence or contraband will be uncovered at that location. Therefore, a reasonable officer would understand that further corroboration—such as independent surveillance of the apartment or further questioning of the informant to determine whether he had seen drugs inside the apartment—was needed before probable cause could be established to search the Yellowstone Parkway apartment.

A comparison to the factually similar case *United States v. Washington*, 380 F.3d 236 (6th Cir. 2004), is illuminating. On the facts contained in the affidavit in *Washington*, this Court held that it was a "close call" whether probable cause existed but ultimately applied the good faith exception. *Id.* at 240 & 242–243. However, the affidavit in *Washington* contained significantly more factual support for the nexus than the affidavit in this case. That affidavit recounts that officers conducted a controlled purchase from a male suspect driving a Cadillac registered to a woman at a house in Columbus, Ohio. *Id.* at 238. Surveilling that house, officers observed the suspect exit the house before traveling to a second controlled purchase. *Id.* at 238–39. In a phone call, the suspect described the Cadillac as "his" car. *Id.* at 239. Officers subsequently observed the Cadillac parked at the house to which it was registered on two separate days following the second controlled purchase. *Id.* The affiant noted that the house has been recently robbed, which in the affiant's training and experience was indicative of drug trafficking. *Id.* The affiant also stated that in his training and experience drug dealers commonly kept records, documents, and money close by. *Id.*

Like the affidavit in this case, the underlying affidavit in *Washington* neither connected the searched residence to any illegal activity nor stated that a suspect who was observed engaging in such illicit activity away from the residence actually lived at the searched residence. *See id.* at 238–39. However, unlike the affidavit in this case, the *Washington* affidavit contained additional facts that supported a minimally sufficient nexus: (1) the suspect described the Cadillac as "his"; (2) the Cadillac was registered to the address of the house and was parked

outside the house on two separate days; (3) the affiant described his training and experience and why that caused him to believe that evidence of crime would be found at the house; and (4) the affiant detailed a recently robbery and its indication of drug activity at the house. *Id.* at 238–39, 243. By contrast, the officers in this case did not check the address of the registration of the silver Chrysler, did not observe the silver Chrysler parked outside the apartment at any time other than the time immediately surrounding the controlled purchases, and did not detail any recent activity at the Yellowstone Parkway apartment such as a robbery that might indicate drug activities. Nor did the affiant make any statement about his training and experience or any other basis that caused him to believe evidence of drug dealing would be found at the Yellowstone Parkway apartment. While the affidavit in this case contained information from the CI's tip, for the reasons discussed above, the CI's tip carries little weight in our analysis. Accordingly, the affidavit in this case contains much less support for probable cause on which an officer could reasonably rely.

The government has identified no case in which this Court has applied the good faith exception to reliance on a warrant supported by information as scant as the information in the affidavit in this case. *Cf. United States v. Runyon*, 792 F. App'x 379, 384 (6th Cir. 2019) (applying exception where affidavit stated that the informant was reliable, had personally seen the defendant sell drugs at the location to be searched, and had a prior history of providing information to law enforcement and reasoning that a reasonable officer would not have known that the affidavit was insufficient because the sufficiency of the affidavit was a close question under this Court's precedent); *United States v. Lee*, 48 F. App'x 184, 188 (6th Cir. 2002) (applying exception where the "affidavit included the statement of a named witness that the witness had recently received illegal drugs from an individual in Lee's residence" and finding that the statement rendered "the officers' belief that there was probable cause to search Lee's apartment . . . not 'entirely unreasonable.'"). In *White*, we applied the exception, finding that because the CI's tip stated that the defendant was selling drugs from a specific address, the police had corroborated the tip by conducting a controlled purchase at that *same address*, and the affidavit included details about the "defendant's criminal history and connection to the residence," alongside "[o]ther facts," the warrant provided a minimally sufficient nexus. 874 F.3d at 497–98. Also in *United States v. Novak*, 814 F. App'x 1009, 1010–13 (6th Cir. 2020),

we applied the good faith exception when presented with an affidavit that is notably different from the affidavit at issue here.  In *Novak*, the officers received a tip from "a trusted confidential informant . . . [stating] that a man known as T.Y. reside[d] on Tedman Court—a street located within the Wilkes Villa low-rise apartment complex—and distribute[d] narcotics from that residence," officers surveilled the residence before and after the controlled purchase, and the affidavit included a recorded phone statement in which the defendant told the CI that he had heroin in his possession while at the apartment complex.  *Id.* at 1010–13 (alterations in original) (internal quotation omitted).  "Although the good-faith standard is less demanding than the standard for probable cause, the affidavit still must draw some plausible connection to the residence."  *Brown*, 828 F.3d at 385–386; *see also Grant*, 2023 WL 119399, at \*5.  Officer Hazlewood's affidavit failed to do so.  For that reason, we conclude that the good faith exception does not apply to save the fruits of an illegal search.  The district court erred in failing to suppress the evidence and statements obtained from the search of the Yellowstone Parkway apartment.

### C.  Remaining Issues

Two issues remain on appeal.  First, before Defendant filed his suppression motion, Defendant moved for supplemental discovery of "case reports and drug evidence relating to the two controlled buys referenced in the search warrant affidavit" for the Yellowstone Parkway apartment.  (Def. Mot. Suppl. Disc., R. 25, Page ID #63.)  The purpose of Defendant's motion for supplemental discovery was to uncover evidence relating to the law enforcement investigation underlying the search warrant that Defendant could subsequently employ as a basis for suppressing the evidence obtained from the search.  The district court denied Defendant's discovery motion, and Defendant appeals from that ruling.  Second, in connection with his suppression motion, Defendant contends that the search warrant affidavit contained false statements made with reckless disregard for the truth and, as a result, he is entitled to a *Franks* hearing to determine whether a preponderance of the evidence supports striking those portions of the affidavit.  *See Franks v. Delaware*, 438 U.S. 154, 155–56 (1978).  Our conclusion that probable cause did not support the search of the Yellowstone Parkway apartment as well as our

holding that evidence and statements from the search should be suppressed makes it unnecessary to consider these issues.

## CONCLUSION

For the reasons set forth above, we **REVERSE** the district court's order denying Defendant's motion to suppress and **VACATE** Defendant's convictions and sentence. We **REMAND** for further proceedings consistent with this opinion.

———————————

**DISSENT**

———————————

NALBANDIAN, Circuit Judge, dissenting. Today, the majority (1) holds that the officer's affidavit could not establish probable cause to search Sanders's apartment and (2) denies application of the good-faith exception. But the affidavit used information from a known confidential informant ("CI") plus corroborating facts based on two rounds of officer surveillance. Under our caselaw, that is enough to establish probable cause. And even if it weren't, this case fits squarely within the good-faith exception. So I respectfully dissent.

## I. Probable Cause

Under the Fourth Amendment, a government agent must "support an application for a search warrant with a substantial basis linking the evidence to be seized and the place to be searched." *United States v. McCoy*, 905 F.3d 409, 415 (6th Cir. 2018) (citation omitted). This means that there must be a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998)). The connection between the residence and the evidence of criminal activity must be specific and concrete, not "vague" or "generalized." *Carpenter*, 360 F.3d at 595. Whether an affidavit establishes a proper nexus is resolved by examining the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). And in determining whether an affidavit establishes probable cause, courts may only consider the "four corners of the affidavit." *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (citation omitted).

"[P]robable cause is a 'practical and common-sensical standard[.]'" *United States v. Reed*, 993 F.3d 441, 447 (6th Cir. 2021) (quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013)). And in reviewing the district court's determination that an affidavit was sufficient to support the issuance of a search warrant, this Court must give "great deference" to the issuing judge's findings of probable cause. *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc) (citation omitted). To that end, we view the evidence in the "light most likely to support the

decision of the district court." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (citation omitted).

The probable-cause question in this case essentially comes down to whether the affidavit established a nexus between the place to be searched and the evidence sought. *See, e.g.*, *United States v. Sumlin*, 956 F.3d 879, 885 (6th Cir.), *cert. denied*, 141 S. Ct. 605 (2020). The affidavit based its probable-cause case on two sources of information—a tip from a CI and information from police observation of Sanders. Those sources combine to establish probable cause that evidence of Sanders's drug trafficking would be found there.

Police identified Sanders based on the CI's description. After the police provided the CI with Sanders's photo, the CI "confirmed that this is the same subject [the CI] know[s] as Antwone Sanders who sells heroin/fentanyl from 2852 Yellowstone Dr."[1] (R. 25-3, PageID 160, Page 54). The CI then conducted a controlled buy of drugs "from Antwone Sanders." (*Id.*) Following the controlled buy, Sanders left in a silver Chrysler, and police "followed [him] . . . without stopping to 2852 Yellowstone Drive." (*Id.*)

Less than two weeks later, the police conducted another controlled buy using the same CI. This time, an officer watched the Yellowstone Parkway address at the time of the buy. The officer noted a silver Chrysler parked outside the residence, which was registered to Sanders. Police saw Sanders leave 2852 Yellowstone Parkway Apartment D and enter the car. They then "followed the vehicle from this location uninterrupted to the pre-determined meeting location" for the controlled buy. Once again, the CI purchased drugs from Sanders. And once again, police observed Sanders driving uninterrupted from the site of the purchase to the Yellowstone Parkway address, where he entered Apartment D.

I believe that the combination of the CI's tip and the officer's corroborating information provided enough evidence to establish a nexus between the Yellowstone Parkway address and evidence of drug dealing. The majority disagrees.

---

[1]The affidavit incorrectly uses both 2852 Yellowstone Dr. and 2852 Yellowstone Parkway. Neither party argues that this difference matters for the probable cause or good faith analysis.

The majority finds insufficient support for a nexus between the Yellowstone Parkway residence and evidence of drug dealing. First, the majority questions the affidavit's reliance on the CI's tip. Namely, the affidavit did not "assert that [] the informant had ever been inside [Sanders's] apartment, that he ever seen drugs or other evidence inside [Sanders's] apartment, or that the informant had seen drugs or other evidence in or around [Sanders's] apartment." (Maj. Op. at 6 (quotation omitted)) The majority also faults the affiant for not attesting to the CI's reliability or providing information about his relationship with the CI. (*Id.* at 7)

But the majority's rejection of the CI's tip departs from our caselaw. It is true that "an informant's veracity, reliability and basis of knowledge are all highly relevant in determining the value of his report." *Gates*, 462 U.S. at 230 (internal quotation marks omitted). But when an informant is "known to the police" and "would be subject to prosecution for making a false report," his statements are given significant weight, especially when compared to tips given by an anonymous source. *United States v. Dyer*, 580 F.3d 386, 391 (6th Cir. 2009) (quoting *United States v. May*, 399 F.3d 817, 824–25 (6th Cir. 2005)). That's especially so when there is "substantial independent police corroboration." *Dyer*, 580 F.3d at 392 (citation omitted); *cf. Allen*, 211 F.3d at 976 (finding independent corroboration of the tip by police is not required when the court is provided with assurances that the informant is reliable).

In other words, our caselaw doesn't make a rule that a CI's tip can only establish probable cause where a police officer issues a rote statement that the CI is "reliable." "[A]dditional evidence substantiating an informant's reliability . . . may be any set of facts that support the accuracy of the information supplied by the informant." *May*, 399 F.3d at 824; *see also United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005) ("[I]t has been the rare case in which the Sixth Circuit has found a search warrant based on an informant tip to be inadequate *if* the information has been corroborated to some degree." (alteration in original) (citation omitted)). In short, "[a]s long as the issuing judge can conclude independently that the informant is reliable, an affidavit based on the informant's tip will support a finding of probable cause." *United States v. Thomas*, 605 F.3d 300, 307–08 (6th Cir. 2010) (citing *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005)).

Here, the CI told the police that Sanders sold drugs from 2852 Yellowstone Parkway. The CI was not an anonymous tipster, but someone who conducted controlled buys under police supervision. And there was "substantial independent police corroboration"—namely police officers twice following Sanders to the Yellowstone Parkway address after drug transactions with the CI. *Dyer*, 580 F.3d at 391 (quotation omitted). That establishes probable cause to search the residence.

The majority says that *United States v. Higgins*, 557 F.3d 381 (6th Cir. 2009), and *United States v. Brown*, 828 F.3d 375 (6th Cir. 2016), show that the CI's statement, combined with the officers' corroboration, was too vague to support a finding of probable cause. (Maj. Op. at 6–7) In *Higgins*, police received the address of the defendant after pulling over a driver who was suspected of being under the influence. 557 F.3d at 385. The driver, who had about 15 grams of cocaine, told the officers that he had bought the cocaine from the defendant the day before, and his passengers corroborated this. *Id.* This Court found insufficient indicia of reliability because there was no evidence beyond the driver's word and the "affidavit does not assert that the informant had been inside Higgins's apartment, that he had ever seen drugs or other evidence inside Higgins's apartment, or that he had seen any evidence of a crime other than the one that occurred when Higgins allegedly sold him drugs." *Id.* at 390. But unlike in *Higgins*, the police here knew and had a working relationship with the CI who provided the tip in the affidavit—and they independently corroborated that tip.

In *Brown*, police searched the defendant's home based on a recorded phone call of another heroin dealer and a drug dog alerting police to the defendant's car. 828 F.3d at 378–79. In that case, there was no connection between the defendant's drug dealing and his home at all— the police never surveilled the home, no CI linked his drug dealing to his residence, and the defendant was only ever observed engaging in drug dealing from his car, which was seen outside another defendant's home. *Id.* at 382–83. The cooperating witness did not mention the defendant, and the police never observed him at the address to be searched.

In Sanders's case, not only did the CI have a collaborative relationship with the police, but police twice confirmed that Sanders was tied to the Yellowstone Parkway address after

observing Sanders travel uninterrupted from controlled drug buys to the apartment. This is more than enough to link the CI's testimony with the address.

Next, the majority says that Sanders's travel between the controlled buys and the Yellowstone Parkway address is inadequate corroboration of the CI's tip. (Maj. Op. at 8) For the majority, Sanders's "entering and exiting of an apartment, alone, provides no indication of criminal activity at the apartment." (*Id.* at 8) But we've found that when the police see a defendant moving between a controlled buy and the identified residence, that "provide[s] a reasonable inference that he transported narcotics from [the] residence to the location of the [drug] sale." *United States v. Coleman*, 923 F.3d 450, 457 (6th Cir. 2019); *see also United States v. Gunter*, 266 F. App'x 415, 419 (6th Cir. 2008) (collecting cases) (holding that a CI's information, combined with police officers' observations of the defendant at his home right before he went to the drug deal provided strong evidence of a nexus between the site and the evidence); *United States v. Miller*, 850 F. App'x 370, 371 (6th Cir. 2021) ("[W]e have repeatedly held that probable cause exists to search a residence for drug-related evidence when a drug dealer travels directly from that residence to the site of a drug deal.") (collecting cases). *United States v. Houser*, 752 F. App'x 223, 225 (6th Cir. 2018) (finding probable cause where police officers obtained a warrant after observing the defendant leave his apartment to conduct a controlled buy). Here, officers twice observed Sanders traveling between his residence and the sites of controlled buys.

The majority distinguishes *Houser* because the controlled buy in that case occurred near the apartment complex, while Sanders conducted his buys away from home. *See* 752 F. App'x at 225–26. But proximity of the drug buy to the apartment complex is not determinative of nexus. For example, in *United States v. Coleman*, we upheld the nexus between a home and drug dealing when the defendant drove from a controlled buy to the residence. 923 F.3d at 457. And in *United States v. Miller*, we upheld a warrant when police had observed a defendant leave an apartment with a grocery bag, sell drugs, and return to the apartment. 850 F. App'x at 371–72.[2]

---

[2]The majority says that the police in that case already suspected that the defendant lived in the apartment and conducted additional surveillance of the property. (Maj. Op. at 11–12) But police here also conducted additional surveillance—an additional controlled buy when they followed Sanders from the Yellowstone Parkway

Similarly in *United States v. Crawford*, an affiant noted that a drug dealer habitually carried his cocaine in a duffel bag and observed that dealer carrying the duffel bag to a controlled buy.  943 F.3d 297, 309 (6th Cir. 2019).  Although part of that panel's analysis centered on the duffel bag supporting the existence of probable cause, the key piece of evidence in that case was "the actual controlled buy."  *Id.* at 309.

The majority distinguishes this case from *Miller* and *Crawford* because Sanders, unlike the defendants in those cases, was not carrying a bag to the drug deal.  (Maj. Op. at 12–13)  But the key in those cases is that the defendant took a direct path from the residence to an actual drug deal—the drug containers themselves were secondary.  *Miller*, 850 F. App'x at 374; *Crawford*, 943 F.3d at 309.[3]

Finally, the majority criticizes the affidavit because it "fails to include even a statement by the affiant officer about his experience and training indicating that drug dealers tend to store evidence in their homes."  (Maj. Op. at 10)  The majority suggests that the affidavit presents little more than the affiant's "mere hunch" that there was a nexus between the Yellowstone Parkway address and the evidence of drug dealing.  (*Id.* (quotation omitted))  But the majority overstates the need for a rote statement of the officer's credentials.

We analyze the contents of an affidavit "on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added."  *Allen*, 211 F.3d at 975.  Moreover, "[a]ffidavits are not required to use magic words."  *Id*.  Instead, we look to whether "[t]aken as a whole, the affidavit provided sufficient facts from which the magistrate could draw an independent conclusion as to the probability . . . of what it alleged a search would disclose."  *Id.*

---

residence to the site of the exchange and back.  This, combined with the CI's tip, makes the link between Sanders's drug dealing and the site as strong, if not stronger, than the links in *Miller*.

[3]The majority also says that the affidavit falls short because it "did not establish probable cause to believe that [Sanders] resided at the Yellowstone Parkway apartment."  (Maj. Op. at 9)  The majority says that although police followed Sanders twice to his apartment, nothing in the affidavit suggests that the police confirmed the home belonged to him.  They did not, for instance, check to see if Sanders or a domestic partner paid the utilities.  *Sumlin*, 956 F.3d at 883.  They did not see if prior criminal activity tied him to that residence.  *Id.*  Again, that's a red herring.  The affidavit did not have to definitively establish Sanders's residence at the apartment.  It had to establish a nexus between the property and the drug dealing.  *See United States v. Ellison*, 632 F.3d 347, 348–49 (6th Cir. 2011).

It is true that the affiant did not explicitly mention his years of service or his observation that drug dealers tend to store drugs at their homes. And perhaps it would be preferable if he had, given that we have found that an officer's experience helps assess probable cause. *See, e.g.*, *United States v. Caicedo*, 85 F.3d 1184, 1193 (6th Cir. 1996); *Gunter*, 266 F. App'x at 419. But we don't *require* a statement of the officer's experience to establish a nexus between a residence and evidence of the crime. The CI's statement that Sanders sold drugs from the Yellowstone Parkway address, combined with the observation of his travel between that residence and two controlled buys was more than sufficient for the magistrate to draw "an independent conclusion as to the probability" that evidence of drug dealing would be found at this address. *Allen*, 211 F.3d at 975. The bottom line is that I would find that the affidavit established probable cause.

## II. Good-Faith Exception

In any event, the good-faith exception applies here. The majority disagrees, holding that the affidavit here was "bare bones." But we "reserve that label for an affidavit that merely states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. Christian*, 925 F.3d 305, 312 (6th Cir. 2019) (en banc) (citation and quotation marks omitted). Under that standard and our caselaw, this affidavit was not "bare bones."

The good-faith "inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984). We reject the exception "when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (citing *Leon*, 468 U.S. at 914–23). We commonly refer to this kind of affidavit as "bare bones."

In a case like Sanders's, an affidavit is bare bones when "evidence in the affidavit connecting the crime to the residence is 'so vague as to be conclusory or meaningless.'" *Frazier*, 423 F.3d at 536 (quoting *Carpenter*, 360 F.3d at 596). But an affidavit is not bare bones if,

although falling short of the probable-cause standard, it contains "a minimally sufficient nexus between the illegal activity and the place to be searched." *United States v. White*, 874 F.3d 490, 496–97 (6th Cir. 2017) (quoting *Carpenter*, 360 F.3d at 596).

And the bar to establish good faith is not a high one. We have described a sufficient nexus as one with "some connection, regardless of how remote it may have been—some modicum of evidence, however slight—between the criminal activity at issue and the place to be searched." *Reed*, 993 F.3d at 451 (quoting *McCoy*, 905 F.3d at 416).

The majority concludes that the affidavit here does not satisfy the good-faith exception standard because a reasonable officer would have recognized that the affidavit at issue could not have supported a finding of probable cause. (Maj. Op. at 13–17) It finds that a reasonable officer would likely have traced each of the alleged deficiencies in the affidavit, concluding that the affidavit could not establish probable cause. (*Id.*) But the majority points to no case in which we have found that an affidavit like the one at issue here did not qualify for the good-faith exception.

The problem is that the majority is, in effect, applying the probable-cause standard to the good-faith exception analysis. But we only get to the good-faith exception because we've already established that probable cause didn't exist. *See Reed*, 993 F.3d at 451 ("*Leon*'s exception applies only when an affidavit falls short of probable cause."); *see also McCoy*, 905 F.3d at 420 (explaining that "reasonable inferences that are not sufficient to sustain probable cause in the first place may suffice to save the ensuing search as objectively reasonable" (citing *White*, 874 F.3d at 500)). And as this Court has repeatedly made clear, the good-faith exception "requires a less demanding showing than the substantial basis threshold required to prove the existence of probable cause in the first place." *Id.* at 536 (quotation marks omitted) (quoting *Carpenter*, 360 F.3d at 595).

The cases that the majority cites that reject a finding of good faith are inapposite. For instance, in *United States v. Helton*, we found that the good-faith exception did not apply when the affidavit was based on (1) the tip of a known CI relaying information from an anonymous CI; (2) a description of the house by the known CI; and (3) a series of calls between the house and

known drug dealers.  314 F.3d 812, 816–17 (6th Cir. 2003).  Because the information of an anonymous tipster is generally unreliable, we held that no reasonable officer could rely on a warrant based on the uncorroborated hearsay of an unidentified tipster.  *Id.* at 824.  Once the information from that tipster was removed, there was insufficient evidence to uphold the warrant. *Id.* at 824–25.

But here the CI was not an anonymous tipster.  In fact, the CI was known to the police because he worked with them on the controlled buys.  And even if an officer reading the affidavit had questioned the word of that CI, the controlled buys and trailing of the defendant to the Yellowstone Parkway residence provided evidence that was not "so vague as to be conclusory or meaningless." *Frazier*, 423 F.3d at 536 (quoting *Carpenter*, 360 F.3d at 596).

 The Supreme Court in *Nathanson v. United States* described the quintessential "bare-bones" affidavit—where the affiant stated only that "he ha[d] cause to suspect and d[id] believe that" liquor illegally brought into the United States "is now deposited and contained within the premises" belonging to the defendant.  290 U.S. 41, 44 (1933); *see also United States v. Weaver*, 99 F.3d 1372, 1379–80 (6th Cir. 1996) (holding that a pre-printed form affidavit where the affiant merely entered the defendant's name, address, and the suspicion that the defendant was keeping marijuana, could not satisfy *Leon*); *Mills v. City of Barbourville*, 389 F.3d 568, 575–77 (6th Cir. 2004) (finding an affidavit to be bare bones where it contained absolutely no information linking the defendant to the searched residence nor provided any reason to believe that evidence of a crime would be found there).  *See also United States v. Williams*, 224 F.3d 530, 533 (6th Cir. 2000).

By contrast, we found that the affidavit in *United States v. Carpenter*, though lacking in probable cause, was not bare bones.  360 F.3d at 596.  In that case, the warrant was based on officers' observations of marijuana growing near the defendants' home and a beaten path from the home to the marijuana plants.  *Id*. at 593.  Although the information in the affidavit was "too vague to provide a substantial basis for the determination of probable cause[,]" those facts "were not so vague as to be conclusory or meaningless." *Id.* at 596.  So the good-faith exception applied.  *See also Van Shutters*, 163 F.3d at 336–38 (upholding a search where the affiant only connected the residence to be searched to illegal activity by stating that the place was "available"

to the defendant); *United States v. Schultz*, 14 F.3d 1093, 1098 (6th Cir. 1994) (finding good faith where the affiant linked the safe-deposit boxes to be searched and the defendant's trafficking in illegal drugs only by a statement that the affiant's training and experience led him to believe that evidence would be in the boxes).

And I am not convinced by the majority's use of *United States v. Washington*. 380 F.3d 236 (6th Cir. 2004), which found in favor of the government on good faith. As the majority acknowledges, that case was an "extremely close call" on whether probable cause existed. And the court applied the good-faith exception without reaching the question of probable cause. *Id*. at 240. We found that good faith applied even though the male defendant's car was registered to a woman who lived at the address to be searched; there was no witness linking the address to drug trafficking; and the officers' trailing of the defendant was interrupted when the defendant stopped to change cars. *Id*. at 230, 238–40. The affidavit here, by contrast, linked the Yellowstone Parkway apartment to drug dealing both by the CI's testimony and the officers' observations of Sanders's movements. The affidavit in *Washington* can hardly be said to have contained "significantly more factual support for the nexus than the affidavit in this case" and does not undermine the argument for a finding of good faith. (Maj. Op at 17)

This affidavit went far beyond the ones we upheld in *Carpenter*, *Van Shutters*, and *Schultz* and it is on par with the affidavit in *Washington*. Again, the affiant noted that a CI known to police identified the Yellowstone Parkway address as the location from which Sanders dealt drugs. He detailed the two controlled buys in which police observed Sanders travelling between that location and a drug deal. This provides more than the "modicum of evidence" that our caselaw requires. *Reed*, 993 F.3d at 451 (quoting *McCoy*, 905 F.3d at 416). It is certainly not so obviously bare bones that no reasonable police officer could rely on a warrant issued based on this affidavit.

And because a reasonable police officer could rely on a warrant issued based on this affidavit, the district court properly denied the motion to suppress.**³**

### III. Conclusion

Because the CI's tip along with the officer's corroborating facts established probable cause, I would uphold the search. And even if probable cause didn't exist, the good-faith exception applies. I respectfully dissent.

---

**³**Because I would uphold the search warrant, I would reach Sanders's other appellate arguments. I would affirm both the district court's denial of supplemental discovery and of an evidentiary hearing largely on the same grounds as the district court. On Sanders's motion for supplemental discovery, however, I would find that the district court erred in its analysis of Federal Rule of Criminal Procedure 16(a)(1)(E)(iii). This rule requires that a defendant be allowed to inspect and to photocopy documents or objects that are "within the government's possession, custody, or control" if "the item was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E). And we may consider a violation of Rule 16 in the context of a conditional guilty plea. *United States v. Harney*, 934 F.3d 502, 507–08 (6th Cir. 2019). Sanders sought to inspect the drugs seized from him in the controlled buys. Because the drugs at issue were obtained from Sanders and were in the government's possession, Sanders should have been permitted to inspect them.

But Rule 16 violations are reviewed for harmless error. *United States v. Clark*, 385 F.3d 609, 619 (6th Cir. 2004). And we have held that the standard to be applied in Rule 16 cases is that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." *United States v. Phillip*, 948 F.2d 241, 251 (6th Cir. 1991) (quoting Federal Rule of Criminal Procedure 52(a)). Though Sanders asserts that his substantial rights were implicated by this failure, he does not show how. (Def. Rep. Br. at 1, 12–13) And I don't think he can. The government's case rested on the drugs and firearms discovered in the search, not the drugs from the controlled buys. Sanders could not have gleaned exculpatory information from the drugs, and nothing suggests that the outcome of this case would have changed if he had inspected them. I would therefore affirm the district court's denial of supplemental discovery and an evidentiary hearing.